## DIETRICH et al. v. DR. KOCH VEGETABLE TEA CO.

No. 6114. Opinion Filed February 29, 1916.

Rehearing Denied March 28, 1916.

(156 Pac. 188.)

1. **DEPOSITIONS—Notice—Names of Witnesses.** It is unnecessary to set out the names of witnesses in the notice to take depositions.

2. **EVIDENCE—Declarations of Principal—Admissibility Against Surety—Res Gestae.** If the declarations of the principal were made during the transaction of the business for which the party was bound, so as to become part of the res gestae, they are admissible against the surety; otherwise, not.

3. **SAME.** In order for the statements and declarations of the principal to be a part of the res gestae so as to be admissible in evidence in a suit against the sureties, the same must have been made in the course of the business for the performance of which the sureties have bound themselves, and the same rule applies to the admission in evidence of the conduct of the principal.

4. **SAME.** Ordinarily, no act, conduct, declaration, or statement of the principal done or made prior to the execution of the obligation can bind the obligors.

(Syllabus by Mathews, C.)

*Error from District Court, Caddo County;*

*J. T. Johnson, Judge.*

Action by the Dr. Koch Vegetable Tea Company, a corporation, against W. F. Dietrich and another. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

*Louie E. McKnight,* for plaintiffs in error.

*Carlisle & Edwards,* for defendant in error.

Opinion by MATHEWS, C. The parties will be designated as in the trial court. This was an action upon a surety bond. One J. W. Lewis entered into a written contract with plaintiff, dated February 1, 1910, wherein

it was agreed that the said Lewis was to purchase certain medicine and other goods from plaintiff and sell the same in Caddo county, Okla. That is, the county of Caddo was allotted to the said Lewis as the territory in which he was authorized to sell such medicine and other goods which he was to purchase from plaintiff at certain stipulated prices named in said contract; said merchandise to be sold to the said Lewis upon time and to be paid for as stipulated in said contract. One of the clauses in said contract was that either party had the right to terminate the same upon giving 60 days' notice in writing to the other of such intention. In said contract the said Lewis acknowledged himself indebted to plaintiff in the sum of $1,508.57, upon a balance due on a previous contract between them for goods sold to him, which sum he agreed in said contract to pay within one year from that date. In the same instrument, and immediately following the signatures of plaintiff and the said Lewis, appears this agreement signed by defendants:

"In consideration of the sum of one dollar to us in hand paid by the above named Dr. Koch Vegetable Tea Company and to induce it to execute the foregoing agreement and extend credit to the above named party of the second part, we, the undersigned, jointly and severally, guarantee payment to said company, its successors and assigns, of any and all indebtedness of said party of the second part mentioned in said agreement or hereinafter arising thereunder. We have read and understand the foregoing agreement and this guaranty. Neither contained any blank spaces when we signed this guaranty which shall take effect at the date of the above agreement.

"J. F. RUZICKA,
"W. F. DIETRICH."

On the 23d day of January, 1911, the plaintiff instituted suit upon the above instrument against defendants and the said Lewis, but no service was had on Lewis. It was alleged that on the 23d day of September, 1910, the plaintiff had given 60 days' notice in writing of its intention to cancel said contract, and that the said Lewis was indebted to it in the sum of $1,633.02, for which it prayed judgment against said defendants according to the terms of the aforesaid written agreement. Defendants answered by general denial, and alleged fraud in the execution of the contract. Judgment was entered for plaintiff in the sum prayed for, and defendants prosecute this appeal.

The plaintiffs in error first attack the notice served by plaintiff for the taking of depositions for the reason that said notice did not contain the names of the witnesses whose depositions were to be taken. In support of their contention, counsel have cited the cases of Donaldson v. Winningham, 54 Wash. 19, 102 Pac. 879, and Ashe v. Beasley, 6 N. D. 191, 69 N. W. 188, which cases are based upon statutes almost identical with ours; each holding that, if not within the letter, it is within the spirit of the statute that the names of the witnesses whose depositions are to be taken should be set out in the notice, so that the adverse party may be able to determine whether he desires to be represented at the taking of the depositions.

There is much reason and force in such a holding, and, if the question were an open one in this jurisdiction, we would be inclined to adopt that ruling; but owing to the fact that the settled construction of this statute in this state and in Kansas, from where we obtained the

same, is that it is unnecessary to set out the names of the witnesses in the notice to take depositions, we are not inclined to disturb a procedure acquiesced in and unques-, tioned for so long a time.

Other objections urged against the validity of the depositions are too hypercritical to take up space in discussing.

The next specification of error is the admission in evidence of certain acts and statements of the principal, Lewis. · It appears that the principal, Lewis, had been selling the plaintiff's goods for several years previous to the date of giving the bond in controversy, and on February 14, 1910, the plaintiff wrote Lewis that he was due it on February 1, 1910, the sum of $1,508.57. The bond in controversy was dated February 1, 1910, but undoubtedly was executed on February 26, 1910. At the trial a witness for plaintiff, after having testified to having written principal, Lewis, on February 14, 1910, that he was due plaintiff the said sum of $1,508.57, was then permitted to testify, over the objections of defendants, that the said Lewis had never questioned the correctness of the account. The plaintiff also introduced the following letter over the objection of defendants:

"ANADARKO, OKLAHOMA, Feb. 26, 1910.

"Dr. Koch Veg. Tea Co., Winona, Minn.—Dear Sirs: I am sending contract and have had the same sureties to sign as they are still in good financial standing and fully understand the plan under which I am buying and selling.

"Yours truly,                    J. W. LEWIS."

It will be noted that this action was against the two sureties, no service having been had on the principal,

Lewis. There is certainly great conflict in the decisions of the various jurisdictions as to the admissibility in evidence of the admissions, declarations, and conduct of the party on whose account the guaranty has been made, as against the guarantors or sureties.

We have been unable to find where our own courts have had the proposition under consideration, except in the case of *Cook County Liquor Co. v. Brown et al.*, 31 Okla. 614, 122 Pac. 167, where it was said:

"Where it is sought to introduce the admission of the principal in a suit against the surety, it should be remembered that the latter is only obligated for the principal's acts, and not for his language. If therefore it does not appear in th's court that the admission constituted part of the *res gestae*, the ruling of the court below sustaining an objection to such an admission will not be disturbed."

In the case of *Lee v. Brown*, 21 Kan. 458, we find the following:

"The general rule is that if the declarations of the principal were made during the transaction of the business for which the party was bound, so as to become part of the *res gestae*, they are admissible against the surety, otherwise not; and that all declarations of the principal made subsequently should be excluded, by analogy to the case of agency. Greenleaf on Ev. (12th Ed.) vol. 1, sec. 187, p. 215; Brandt on Suretyship and Guaranty, sec. 518; *Stetson v. Bank of New Orleans*, 2 Ohio St. 167."

"Declarations of a principal, in order to be admissible against his surety, must ordinarily be a part of the *res gestae*." (*Knott v. Peterson*, 125 Iowa, 404, 101 N. W. 173.)

"Declarations of the principal that a debt was secured by the guaranty, made after he incurred the debt, are not admissible against the guarantor." (*Opet v. Denzer* [Tex. Civ. App.] 93 S. W. 527.)

"The declarations of a principal made subsequent to the act to which they relate, and not as part of the *res gestae*, are not competent evidence against his surety." (*Hatch et al. v. Geo. B. Elkins*, 65 N. Y. 489; *Atlas Shoe Co. v. Bloom*, 209 Mass. 563, 95 N. E. 952; *Cohen v. Hurwitz et al.*, 142 N. Y. Supp. 305; *Strobel & Wilken Co. v. Weisen*, 144 App. Div. 149, 128 N. Y. Supp. 798; *Nickols v. Jones*, 166 Pa. 599, 31 Atl. 329; *Ball-Carden Co. v. Humphrey* [Tex. Civ. App.] 154 S. W. 595; *Root & Sons Music Co. v. Caldwell*, 54 Iowa, 432, 6 N. W. 695; *Griffith v. Turner*, 4 Gill [Md.] 111; *Kirkpatrick v. Howk*, 80 Ill. 122; *Singer Mfg. Co. v. Coon*, 9 Misc. Rep. 465, 30 N. Y. Supp. 232.)

But the difficult proposition that confronts us here is, not to lay down the law, but to apply it. It is easy to say that if the admissions of the principal constitute a part of the *res gestae* they would be admissible against the surety, otherwise not; but when we attempt to decide whether or not the silent acquiescence of the principal, Lewis, that the account was correct, constituted a part of the *res gestae*, we are confronted with a most difficult proposition.

In *Guaranty Co. of North America v. Phoenix Ins. Co.*, 124 Fed. 170, 59 C. C. A. 376, it is said:

"The admission of a servant, the principal in an employee's bond, with respect to matters pertaining to the performance of his guaranteed duties, made while he is engaged in their discharge, is always competent evidence against the surety upon his bond. *U. S. v. Gaussen*, 19 Wall. 198, 213, 22 L. Ed. 41; *Hall v. United States Fidelity & Guaranty Co.*, 77 Minn. 24, 79 N. W. 590; *Lancashire Ins. Co. v. Callahan*, 68 Minn. 277, 280, 71 N. W. 261, 64 Am. St. Rep. 475; *Guaranty Co. of North America v. Mutual Building & Loan Ass'n*, 57 Ill. App. 254; *Pendleton v. Bank of Kentucky*, 1 T. B. Mon. (17 Ky.) 171; *McShane v. Howard Bank*, 73 Md. 135, 20 Atl. 776, 10 L. R. A. 552; *Union Sav. Ass'n v. Edwards*, 47 Mo. 445."

To the same effect is *Great West Life Assur. Co. v. Shumway*, 25 N. D. 268, 141 N. W. 479:

"A certain letter written by Shumway to the company shortly prior to the termination of his agency contract was offered in evidence for the purpose of proving an admission by Shumway that he was indebted to the company in a certain sum. A proper foundation was laid for the introduction of such letter, and the same was competent proof as against these respondents to having been written while Shumway was in the plaintiff's employ under the agency contract."

We take the following from the case of *Blair v. Perpetual Ins. Co.*, 10 Mo. 559, 47 Am. Dec. 129:

"The admission in evidence of the account rendered by Homans, in which he charges himself with the amount for which the action is brought, brings up the question, how far the admissions of a principal will affect his security. In the cases which have arisen on this subject, the inquiry has been whether the declarations were made in the course of business for the performance of which the surety is bound, so as to become a part of the *res gestae*. If the declarations are made under such circumstances, they are binding on the surety; otherwise, not. The rule being that a surety is bound for what his principal does, and not for what he might say he had done, therefore, if one is liable on a bond as surety for the good conduct of another as clerk, it has been held that, in an action against the surety, the declarations of the principal, made after his dismissal, were not evidence against him, though it would be otherwise in regard to entries made by the clerk in the course of his employment.

"Where the admissions of the principal are made in the course of the performance of the business for which the surety is bound, so as to become a part of the *res gestae*, they are evidence against the surety." (*Lancashire Ins. Co. v. Callahan*, 68 Minn. 277, 71 N. W. 261, 64 Am. St. Rep. 475; *Bank of Br'ghton v. Smith*, 12 Allen [94

Mass.] 243, 90 Am. Dec. 144; *Barry v. Screwmen's Ass'n*, 67 Tex. 250, 3 S. W. 261; *Star Grocer Co. v. Bradford*, 70 W. Va. 496, 74 S. E. 509, 39 L. R. A. [N. S.] 184; *McKim v. Blake*, 139 Mass. 593, 2 N. E. 157; *Hall v. United States Fidelity & Guaranty Co.*, 77 Minn. 24, 79 N. W. 590; *Capital Fire Ins. Co. v. Watson et al.*, 76 Minn. 387, 79 N. W. 601, 77 Am. St. Rep. 657; *Prosser v. Hartley*, 35 Minn. 340, 29 N. W. 156; *McShane v. Howard Bank*, 73 Md. 135, 20 Atl. 776, 10 L. R. A. 552.)

From these above-cited authorities we take it that, in order for the statements and declarations of the principal to be a part of the *res gestae* so as to be admissible in evidence in a suit against the sureties, the same must have been made in the course of the business for the performance of which the sureties have bound themselves, and the same rule applies to the admission in evidence of the conduct of the principal. In the case at bar it is claimed by the plaintiff that the conduct of the principal, Lewis, when presented with a statement of the account of February 14, 1910, by not raising any objection to its correctness, operated to make the account a stated account and was a tacit agreement that the same was correct. But the sureties did not become obligated as sureties until February 26, 1910. Most certainly no act or conduct of principal, Lewis, can or should bind the sureties until they have become obligated to answer for his acts and conduct. What was done prior to their signing the bond cannot react upon them and bind them. In no sense can it be said to be part of the *res gestae*. If the principal had agreed to an account stated at any time during the life of the obligation entered into by the sureties, it would undoubtedly have been such an act in the course of the business that would have been admissible testimony in an action against the sureties on the bond. Such an acknowl-

edgment, made in a reasonable time after the termination of the obligation in settlement of the business carried on during the life of the obligation, would perhaps be admissible testimony; but we cannot hold that an act done before the obligation begins can bind the sureties or be given in evidence against them.

We are further of the opinion that the admission in evidence of the letter of February 26, 1910, was error, because the writing of such a letter had nothing to do with the obligation which the sureties had assumed and did not constitute any part of the *res gestae*. Further, it was simply a statement of a conclusion which Lewis had arrived at, which at least implies that the sureties understood the nature and condition of the obligation assumed by them. This becomes very material in face of the fact that their principal defense to the action was an allegation of fraud in inducing them to sign a bond, the conditions of which they claimed had been fraudulently misstated to them.

We find no error in the admission of plaintiff's records to prove its account against Lewis.

For the reasons given, we recommend that the judgment be reversed and remanded.

By the Court: It is so ordered.